RICHARDVILLE and others *v.* THORP and others.

*(Circuit Court, D. Kansas.* June 9, 1886.)

1. INDIANS—DEED OF INDIAN LAND—EVIDENCE.
   Where a deed of lands purports to have been executed by the heirs of a deceased Indian, neither the "certificate of identity" required by the interior department, nor the formal approval of said deed by the secretary of that department, are conclusive on the United States courts as to the identity of the grantors.

2. SAME—VALIDITY OF DEED.
   When the validity of such a deed is in issue before said courts, and the proofs show that the grantors therein falsely personated the real heirs, and thereby actually misled the official who approved the conveyance, the deed will be held void.

At Law.

*Beeson & Baker* and *Brayman & Sheldon,* for plaintiffs.

*T. M. Carroll* and *W. T. Johnson,* for defendants.

BREWER, J. This question is presented: One Pa-pee-ze-sa-wah was the patentee of lands in Miami county. He was a member of the confederated tribes of Kaskaskia and Peoria, Piankeshaw, and Wea Indians. He died about 1857, unmarried, childless. The plaintiffs in this suit are his heirs, both by the common law, and any known law that recognizes blood relationship as a rule of inheritance. In 1870 there was a deed made by Felix Waddle and Louisa of this land to parties under whom the defendants claim. That deed was approved. It was accompanied by the certificate of the chiefs Baptiste Peoria and James Charlie that Felix Waddle and Louisa were the sole heirs of Pa-pee-ze-sa-wah, and with that certificate went the approval of the secretary of the interior. And the question in the case is whether that approved deed is good against the unquestionable title by inheritance of these plaintiffs.

The act of congress providing for the allotment and patenting of these lands to the Indians in severalty authorized their sale under such regulations and rules as should be prescribed by the secretary of the interior. In pursuance thereof, the secretary of the interior issued a series of rules, one of which was to the effect that where the patentee was dead the deed should be accompanied by a certificate of the head chiefs that the grantors were the sole heirs of the deceased. Was that sufficient to divest the real heirs of the decedent of their title? Such action of the chiefs and the secretary of the interior would obviously not be sufficient, under the federal statute alone, because that gives no authority to the secretary of the interior to prescribe rules and regulations by which other persons than those who held the title could divest the real holder of such title. He can say what evidence shall be submitted as to the competency of the grantor, his ability to manage his affairs, the fact that the money was paid,

that he acknowledged the deed, and all kindred matters. But beyond that it gives him no power to act. He had no judicial power to adjudge a forfeiture, to decide questions of inheritance, or to divest the owner of his title without his knowledge or consent.

Neither can it be sustained, under the testimony, by any custom or law of these tribes. It does not appear from this testimony that there was any tribunal to whom the question of heirship was in fact submitted, or that the chiefs had the power of making that determination. In that respect it differs from the case of *Brown* v. *Steele*, 23 Kan. 672, where the Shawnee council was invested with certain judicial powers, and in which proof of its action was made. The testimony here fails to show that the chiefs had, by the custom, or what may be called the common-law, of the tribe, any such power as that of determining questions of inheritance, or that any inquiry or determination was in fact made. There is testimony that Baptiste Peoria was head chief, and a man of marvelous ability, and, by reason of that wonderful ability, had become a sort of general managing agent for all the individual Indians of those tribes. He assumed the care of all their business, personal as well as tribal, and transacted it for them. Well, such testimony is not sufficient to render him the agent of any particular Indians, with authority to sell their land without their knowledge, and in the name of somebody else. He was not a personal agent of the two Indians who were the heirs and owners of this land. He did not assume to be acting for them, but for Felix Waddle and Louisa, the grantors in the approved deed. The owners were entirely ignorant of the transaction; and, to bind them by his acts, there must be something more than the general testimony that Baptiste Peoria was looked upon by all the Indians as a sort of managing man for them.

In this case it appears that one of these grantors, Louisa, was the blanket wife of Baptiste Peoria. She is living. She testifies that she knows nothing about this conveyance. She was asked the question whether Pa-pee-ze-sa-wah—this deceased Indian—was a relative of hers. She answered that he was her boy. She was asked if he was her son. She said, "No." Then, if he was older than she was, and she said "Yes." She was asked what she meant when she said he was her boy, and she said she did not know; and it appears, beyond any question, that they belonged to different tribes in that confederated band. There was no blood relationship between them. He was older than she, and while she, in answer to one question, said that he was her boy, she did not explain what she meant. Baptiste is dead. The other chief (Charlie) testifies that he knows nothing about the matter. He was in the habit of signing everything that Baptiste brought to him.

There is raised a very strong suspicion, notwithstanding the testimony in regard to Baptiste's good character, that it was a transaction in which, representing his blanket wife and her brother to be the

heirs, he sold the land, and pocketed the proceeds. If there was any doubt about the matter of heirship, or any fair excuse which, in my judgment, would justify sustaining the validity of this approved deed as against these heirs, I should deem it my duty to sustain it. But the testimony is very clear, and by a multitude of witnesses.

Judgment will have to go for the plaintiffs.